UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESMELING BAHENA,<br><br>Plaintiff,<br><br>v.<br><br>B. RAMIREZ, et al.,<br><br>Defendants. | Case No. 22-cv-03039-PCP<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 55 |

Esmeling Bahena, a California prisoner proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Mr. Bahena alleges that defendants Ramirez and Navarro were deliberately indifferent to his serious mental health needs.

Defendants have moved for summary judgment. Dkt. No. 55 ("MSJ"). The Court agrees with defendants that Mr. Bahena did not show the delay in rendering mental health treatment caused him any harm. Because this argument is dispositive of the matter, the Court need not consider defendants' other arguments.

For the reasons stated below, defendants' motion for summary judgment is **GRANTED**.

I.  **Background**

At the relevant time, Mr. Bahena was incarcerated at Salinas Valley State Prison ("SVSP").

Mr. Bahena was evaluated by multiple "Psych Techs" on August 5, 7, 8, and 9, 2021. *See* Dkt. No. 55-3 ("Barbosa Declaration") ¶¶ 16–18 (summarizing Mr. Bahena's mental health treatment). Each Psych Tech noted that Mr. Bahena reported no suicidal ideation or behavior and had no access to a suicide method. *See id*.

On August 9, 2021, at 8:30 p.m., Mr. Bahena was seen at his cell by Psychologist Scrantom. *Id.* ¶ 19. During this appointment, Mr. Bahena denied "delusions or preoccupied thinking," denied "any current suicidal ideation, plan, or intent," and did not appear to be in any distress. *Id*. Mr. Bahena asked Psychologist Scrantom for a phone call. Psychologist Scrantom passed Mr. Bahena's request to the sergeant on duty, but the sergeant denied the request. *See* Dkt. No. 55-8 ("Exhibit A") at AGO 1734.

In his verified amended complaint, Mr. Bahena alleges that at 8:47 p.m. on August 9, 2021, he reported suicidal ideation to Defendant Correctional Officer Ramirez. Am. Compl. at 4. Mr. Bahena alleges that Officer Ramirez "ignored" Mr. Bahena's statement and "walked away." *Id*. Mr. Bahena alleges that he then cut his wrist and arm, and on Officer Ramirez's next round "showed him my bloody arm" and asked for help. *Id*. Mr. Bahena alleges Officer Ramirez ignored him again. Officer Ramirez disputes Mr. Bahena's story:

> On August 9, 2021, Bahena did not inform me that he was experiencing suicidal ideation or that he attempted to commit suicide by cutting his wrist and arm. Nor did I see any such injuries or out of the ordinary behavior from Bahena. I did not also see that Bahena had any other need for immediate medical care. If I did, I would have immediately activated a medical emergency and summon[ed] medical staff.

Dkt. No. 55-6 ("Ramirez Declaration") ¶ 4.

Mr. Bahena alleges that at 10 p.m., he swallowed razor blades. Am. Compl. at 4. He alleges that he reported his suicidal ideation, arm cutting, and swallowing of razor blades to Defendant Correctional Sergeant Navarro-Castillo, showed Sergeant Navarro-Castillo his bloody arm, and asked for help. *Id*. Mr. Bahena alleges that Sergeant Navarro-Castillo "told me 'go ahead [and] kill yourself I[']m not going to stop you from killing yourself,' then walked away." *Id*. Mr. Bahena alleges that nearby inmates "scream[ed] to [defendants] to . . . get me help," but defendants took no action. *Id*. at 5. Sergeant Navarro-Castillo disputes Mr. Bahena's story:

> On August 9, 2021, Bahena did not show me [a] bloody arm or [tell] me that he had swallowed razor blades. Bahena did not also ask me for any medical or mental health help that day. Nor did I see any injuries or out of the ordinary behavior from Bahena. If l did, I would have immediately activated a medical emergency and summon[ed]

2

medical staff.

Dkt. No. 55-5 ("Navarro-Castillo Declaration") ¶ 4.

The parties agree that Mr. Bahena received medical and psychological help the following morning, August 10, 2021. *See* Am. Compl. at 5, MSJ at 12. At or before 10:00 a.m., he was seen by a Psych Tech. *See* Ex. A at AGO 1599. He expressed "passive s[uicidal] i[deation]," and SVSP's Crisis Intervention Team ("CIT") was "activated." *Id*. at 1598–99. Mr. Bahena then met with a CIT member. *See id*. at 1369. Mr. Bahena's medical records state that the meeting with the CIT member was the first time Mr. Bahena reported swallowing razor blades. *See* Ex. A at AGO 1441, 1445, 1446.

Immediately upon reporting he had swallowed razor blades, Mr. Bahena was taken to SVSP's Treatment and Triage Area ("TTA") where he met with a medical nurse. *See* Bright Decl. ¶ 17; *see also* Dkt. No. 55-4 ("Lalas Declaration") ¶ 8. The nurse took and recorded a physical assessment of Mr. Bahena, checked his vital signs, and consulted with a doctor. *See id*. ¶¶ 8–9. The doctor ordered a "nose to rectum" x-ray, which did not reveal any razor blades. *Id*. ¶ 9; *see also* Ex. A at AGO 1717–18. The medical nurse noted that Mr. Bahena's "body skin integrity was intact with no abnormalities or cuts," and that the nurse did not see any cuts on Mr. Bahena's arm or body. Lalas Decl. ¶¶ 8, 11; *see also* Ex. A at AGO 1397. Mr. Bahena also reported he had no bleeding or changes to his throat or bowel. Lalas Decl. ¶ 8.

Mr. Bahena met with Psychologist Barbosa. *See* Dkt. No. 55-3 ("Barbosa Declaration") ¶ 20. Psychologist Barbosa arranged for Mr. Bahena to receive a phone call to his family and cleared him to return to his cell. *Id*. ¶ 20. Psychologist Barbosa noted that Mr. Bahena's "suicidal ideation statements were dependent on being allowed to make a phone call rather than with intent to die." *Id*. ¶ 21.

On August 11, 2021, Mr. Bahena had an appointment with Psychologist Scrantom. *See* Ex. A at AGO 1441. Mr. Bahena told Psychologist Scrantom that he had reported swallowing razor blades in an attempt to get a phone call to his family. *See id*.; *see also id*. at AGO 1446 ("Pt noted primary interest was to get a phone call.") & AGO 1444 ("IP reported that he has since been able to talk to his family and does not feel suicidal any longer based upon the conversation that they

3

1  had.").

2  Mr. Bahena's mental health records note a "history of claiming self-injurious behavior in
3  efforts to influence" administrative decisions, such as his transfer between prisons and to change
4  his level of care. Barbosa Decl. ¶ 20.

5  On August 12, 2021, Mr. Bahena was transferred from SVSP to Kern Valley State Prison.
6  *Id*.

## II.  Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

4

### III.  Analysis

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

Here, there is a factual dispute as to whether Mr. Bahena had a serious medical need on August 9, 2021. It is undisputed, however, that Mr. Bahena received care ten hours later and suffered no harm from they delay in care. Because Mr. Bahena suffered no harm, his claim fails.

####   A.   Medical need

The parties dispute whether Mr. Bahena had a serious medical need on August 9, 2021. *Compare* MSJ at 13 *with* Opp.

Defendants argue the Court should disregard Mr. Bahena's claim to have had a medical need because that claim is contradicted by medical evidence in the record. *See* Reply at 3–4 (citing *Scott v. Harris,* 550 U.S. 372, 380 (2007)). It is true that Mr. Bahena's medical records repeatedly show he did not cut himself or swallow razor blades on August 9, 2021. *See* Lalas Decl. ¶¶ 8–9; *see also* Ex. A at AGO 1717–18 (showing no razor blades in Mr. Bahena's x-ray) & AGO 1397 (Mr. Bahena's "body skin integrity was intact," with no cuts on his arms or body). The evidence

thus "blatantly contradict[s]" Mr. Bahena's claim that he cut himself and swallowed razor blades, "so that no reasonable jury could believe" that Mr. Bahena injured himself. *Scott*, 550 U.S. at 380. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. Because the medical records show that Mr. Bahena did not cut himself or swallow razor blades, the Court need not credit his declarations stating that he did.

The medical records, however, are silent as to whether Mr. Bahena told defendants of suicidal ideation on August 9, 2021, and as to whether he requested psychological help that night. Defendants swear in their declarations that Mr. Bahena did not inform them that he felt suicidal and did not seek their help. *See generally* Navarro-Castillo Decl. & Ramirez Decl. On the other side, Mr. Bahena swore in his amended complaint that he did express suicidal ideation and requested help from defendants. *See generally* Am. Compl. The amended complaint was submitted under penalty of perjury and thus is a verified complaint that may be used as an opposing affidavit under Rule 56. *See* Am. Compl. at 4 ("I declare under penalty of perjury that the foregoing is true and correct."); *see also Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10–11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit even though verification not in conformity with 28 U.S.C. § 1746 where plaintiff stated under penalty of perjury that contents were true and correct and allegations were not based purely on his belief but on his personal knowledge). Statements of fact in Mr. Bahena's Amended Complaint thus are considered evidence in evaluating the motion for summary judgment. Because Mr. Bahena swore under penalty of perjury that he requested help from defendants on August 9, 2021, he has submitted some evidence that he claimed to have a serious medical need that night – even if the claim Mr. Bahena made on August 9, 2021 was untrue.

The Court has one sworn statement from Mr. Bahena that he requested help, and defendants' sworn statements that he did not.[1] This is a classic dispute of fact that precludes

---

[1] Mr. Bahena also provides an unsworn declaration from a now-deceased neighboring inmate. Mr. Burks. *See* Opp at 14–17 ("Burks Declaration"). Mr. Burks purported to have heard Mr. Bahena

6

summary judgment on the issue of whether Mr. Bahena had a serious medical need.

### B. No harm

Defendants next argue that Mr. Bahena was not completely denied medical care but instead was given delayed medical care. Defendants argue this delayed care does not state a claim because it did not cause any harm to Mr. Bahena.

Before a defendant may be liable for deliberate indifference, there must be harm resulting from the defendant's act or failure to act. *See McGuckin*, 974 F.2d at 1060 ("[W]hen, as here, a claim alleges 'mere delay of surgery,' a prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful.'") (citing *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (concluding that a "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . unless the denial was harmful")); *see also Estelle*, 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to serious medical needs/") (emphasis added). "[H]armless delays in treatment are not enough to sustain an Eighth Amendment claim." *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022).

Here, it is undisputed that Mr. Bahena did not suffer any harm as a result of the twelve-hour delay in receiving psychological help. The medical records reveal that Mr. Bahena had neither cut himself nor swallowed razor blades. *See generally* Ex. A. Mr. Bahena did not claim any other physical injuries in his Amended Complaint. *See generally* Am. Compl. Because he suffered no injury, defendants are not liable to Mr. Bahena. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury or

---

tell Officer Ramirez and Sergeant Navarro-Castillo of his suicidal ideation and self-harm. *See id*. Mr. Burks did not purport to have seen the self-harm or any evidence thereof, only to have heard Mr. Bahena's representations about that harm. *See id*. Defendants argue that this unsworn declaration is inadmissible hearsay not subject to any exception that would allow its admission. *See* Reply at 5–6. Defendants note that the declarant's handwriting and signature do not match other samples of that inmate's handwriting and signature, the date of the declaration was changed, and the original date post-dated the death of Mr. Bahena's neighbor. *See id*. The Court agrees that the declaration does not fall within any hearsay exception and does not have sufficient guarantees of trustworthiness to allow it to fall within the residual hearsay exception. *See* Fed. R. Evid. 804, 807. The Court will thus strike the Burks Declaration.

the commission of a sexual act . . . ."); *see also Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding that "somatic manifestations of emotional distress" such as weight loss, appetite loss, and insomnia cannot establish physical injury under § 1997e(e)).

Because the evidence shows that Mr. Bahena did not suffer any harm from any delay in psychological treatment, the Court **GRANTS** defendants' Summary Judgment Motion.

**IT IS SO ORDERED.**

Dated: March 26, 2025

P. Casey Pitts
United States District Judge